# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JACQUELINE VASSER, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS,<br><br>    Plaintiff,<br><br>vs.<br><br>FCA US LLC, THE PLAN ADMINISTRATOR OF THE FCA US LLC GROUP INSURANCE PROGRAM;<br><br>METROPOLITAN LIFE INSURANCE COMPANY, THE CLAIMS ADMINISTRATOR OF THE FCA US LLC GROUP INSURANCE PROGRAM;<br><br>FCA US LLC GROUP INSURANCE PROGRAM<br><br>JOHN AND JANE DOES 1–20,<br><br>    Defendants. | **CLASS ACTION COMPLAINT**<br><br><br>**Case No. 2:25-cv-12529** |

## PRELIMINARY STATEMENT

1. Plaintiff Jacqueline Vasser ("Plaintiff"), by and through her undersigned counsel, brings this action individually, on behalf of all others similarly situated, to remedy Defendants' systemic breaches of fiduciary duty and violations of ERISA. This action challenges the Defendants' design, implementation, and maintenance of a premium billing scheme that

inevitably underbills premiums for each coverage month, resulting in wrongful coverage terminations, retroactive lapses, and benefit denials.

2. ERISA imposes strict fiduciary duties of loyalty, care, and prudence on those who administer and manage employee benefit plans. Fiduciaries must act solely in the interest of Participants ("Participant" as defined under 29 U.S. Code § 1002(7)) and beneficiaries ("Beneficiary" as defined 29 U.S. Code § 1002(8)) and must ensure that plan assets are managed prudently.

3. This case challenges a premium-collection scheme so fatally flawed that it made coverage for future events or injuries a mathematical impossibility. Defendants designed and implemented a retroactive premium billing system that collected premiums from Participants on a weekly basis via automatic payroll deduction.

4. These premiums were then applied for the week that just passed rather than the upcoming week. As such, Defendants provided illusory coverage as the insurance benefit being paid for was to insure against a past risk that did not occur and provided no protection from a future event — the entire purpose of insurance.

5. Defendants also serially underbilled Participants, which ensured no coverage was active for any future event.

6. As a result, a Participant could work an entire month and make all premium payments via weekly payroll deductions, and would still have no insurance protection.

7. Plaintiff seeks relief on behalf of herself and a class of similarly situated individuals to restore Plan losses, recover wrongfully denied benefits, and secure prospective injunctive relief to prevent further harm from these unscrupulous administrative and claim procedures.

## NATURE OF THE ACTION

8. One of the insurance benefits purportedly provided by Defendants are accidental death and dismemberment (AD&D) benefits, which are governed by Group Policy No. 73903-1-G (the "Policy").

9. Defendant FCA US LLC administers this AD&D life insurance benefit program and collects premiums from the Participants.

10. Premiums are collected via weekly payroll deductions from Participants and are calculated by Defendant FCA US LLC using a rounding formula that inevitably and unavoidably underbills Participants. This practice results in all premium payments being underbilled, thereby exposing beneficiaries to denials of coverage based on insufficient premium payments received by Defendant Metropolitan Life Insurance Company.

11. The Policy states that a Participant loses eligibility for coverage in "the month for which the last premium has been paid[.]"

12. Invoices for premiums issued to Participants, including Plaintiff, expressly state this practice.

13. These same invoices fail to properly inform Participants of the actual premium amount to keep coverage active under the Plan.

14. In fact, these invoices materially mislead Participants that if they paid them in full, coverage would stay active, even though that was false.

15. Defendants knew that their premium collection method inevitably causes shortfalls for all Participants during the coverage month, creating a foreseeable risk that claims will be denied and coverage will be deemed lapsed, even for Participants that are actively at work and paying the premium bills provided by Defendant.

16. Plaintiff's own $150,000 accidental death claim following the May 15, 2022, death of her husband, Christopher Vasser, was denied solely because of a shortfall in her May premium payments, even though premiums were collected from her weekly paycheck in May of 2022.

17. Defendants' conduct violates ERISA §§ 404(a)(1)(A)-(D) (29 U.S.C. § 1104(a)(1)(A)-(D)), ERISA § 409 (29 U.S.C. § 1109), and entitles Plaintiff to recover benefits under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), and to obtain injunctive and other equitable relief under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)).

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action arises under ERISA.

19. Venue is proper under 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, Defendants may be found here, and Plaintiff resides in Wayne County, Michigan.

## PARTIES

20. Plaintiff, Jacqueline Vasser ("Plaintiff"), is a citizen and resident of Wayne County, Michigan, and is a Participant and beneficiary under the Plan within the meaning of 29 U.S.C. § 1002(7). Plaintiff on behalf of herself, a class of similarly situated persons, brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, to remedy systemic breaches of fiduciary duty, wrongful denial of benefits, and ongoing violations of ERISA's statutory mandates.

21. Defendant FCA US LLC ("FCA") is the Plan Administrator and a fiduciary of the Plan within the meaning of 29 U.S.C. §§ 1002(16), 1002(21). Defendant FCA US LLC offers its employees specific insurance benefits through the FCA US LLC Group Life Insurance Plan (the "Plan").

22. Defendant Metropolitan Life Insurance Company ("MetLife") is the Claims Administrator and a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21).

23. Defendant FCA US LLC Group Insurance Program ("FCA Group Insurance Program") is an ERISA governed employee welfare benefit plan within the meaning of 29 U.S. Code § 1002(1).

24. John and Jane Does 1–20 are other fiduciaries of the Plan, or people or entities acting in a fiduciary capacity under the plan, who are currently unknown and their actions or inaction may have caused or contributed to the allegations of this complaint.

## FACTUAL ALLEGATIONS

25. The Plan provides group life insurance coverage to eligible employees and their beneficiaries, with premiums funded in part through payroll deductions. A copy of the Plan is attached as **Exhibit A**.

26. Defendant has informed Plaintiff that the Plan's coverage for AD&D benefits is governed by the Policy. A copy of the Policy is attached as **Exhibit B**.

27. The Policy states that AD&D benefits end at the "end of the month for which the last premium has been paid".

28. The Policy does not have a grace period.

29. The way premiums were collected by Defendants ensured that no Participant was ever actually covered with AD&D benefits in the month that an accidental death or injury occurred.

30. This is because premiums were collected on a backward-looking basis.

31. Participants would be billed for coverage weekly, and the premium payment was for AD&D coverage for the week that just passed.

32. This is counter to how insurance is supposed to work by insuring against a future risk.

33. Instead, Defendants made Participants pay for insuring against a past risk, effectively meaning there was no AD&D protection for Participants.

34. The way premiums were taken in combination with the plain language of the Policy, effectively made no Participant have coverage under the Plan for AD&D benefits, which is something the Plan stated was offered to Participants.

35. When a Participant was sent a bill for premiums for AD&D benefits, improper amounts were billed.

36. Because premium payments were never "current" or paid in full in any given month, Defendant MetLife was bound to follow the Policy's language — Policy language which identifies that coverage does not exist if the monthly premium fails to be "current" or paid — by categorically denying claims for AD&D benefits.

37. Defendants designed and implemented a premium collection scheme that results in every month being underbilled, meaning no Participant ever had coverage for an accidental death or injury per the plain language of the policy.

38. This billing structure inevitably deprives Participants of AD&D coverage because coverage was never active for an upcoming accident injury or accidental death.

39. Even if a Participant fully complied with Defendants' billing structure, there would still be no coverage for a future event due to Defendants' serial underbilling.

40. Defendants had a duty of loyalty and prudence under ERISA § 404(a)(1)(A).

41. Defendants were required to act in the best interest of Participants and not misinform them.

42. This systemic underbilling and delayed remittance constitutes a breach of ERISA fiduciary duties because it went directly against the interest of Participants and misled them about the benefits they actually had.

43. Plaintiff was a Participant of the Plan and had coverage through the Policy.

44. Plaintiff had $300,000 in AD&D benefits for herself through the plan.

45. Plaintiff's spouse, Christopher Vasser, had $150,000 in AD&D benefits through the Plan.

46. Plaintiff was billed weekly through her paystub for AD&D benefits.

47. In 2022, Plaintiff had $2.49 deducted from her paystub weekly for AD&D coverage.

48. At the end of January 2022, Plaintiff paid $9.96 in premium for AD&D coverage.

49. Defendant has stated that Plaintiff's monthly premium for AD&D coverage was $10.80.

50. Plaintiff never had coverage for January until she paid the first weekly premium in February.

51. Plaintiff was not insured for January until after an insurable event in January could even occur.

52. This pattern continued for February, with coverage not becoming active until the middle of March.

53. Due to the serial underbilling, this was repeated for March and April 2022.

54. Plaintiff did not work for the first two weeks of May 2022, so she did not receive a paycheck.

55. As such, no premium was taken for AD&D coverage for the first two weeks of May.

56. Defendant sent a billing invoice to Plaintiff stating she had to pay $10.80 to ensure AD&D coverage would stay active. Premium invoice attached as **Exhibit C**.

57. The premium invoice stated: "Your monthly benefit premium is due. To maintain continuous coverage in the benefit plans listed above, payment in FULL is required at this time."

58. Even if Plaintiff paid this premium invoice, there would not have been any coverage for May 2022 because of Defendant's serial underbilling.

59. As of April 29, 2022, Plaintiff was billed a total of $37.35 for AD&D coverage. In order to have coverage for April, she would have had to pay $43.20.

60. Paying all premiums billed to her as of April 29, 2022, meant that Plaintiff only had AD&D coverage through March 31, 2022, as that was the last month the full premium was paid for.

61. On May 15, 2022, Christopher Vasser died as the victim of a homicide.

62. Plaintiff submitted a claim for the AD&D benefits she believed covered her spouse.

63. Plaintiff was billed for AD&D coverage in May on her June 3, 2022, stub. This included a premium payment of $2.49, plus an additional premium of $2.49 to allegedly catch the premium up.

64. As of June 3, 2022, Plaintiff paid a total of $47.31 in premiums but was required to pay $54 in premiums to have AD&D coverage through May 2022.

65. Plaintiff did not have coverage for May 2022 until the end of June 2022 as a result of Defendant's serial underbilling practice.

66. On November 21, 2022, Defendant MetLife sent a letter denying Plaintiff's claim stating the premiums for May 2022 were never fully paid. Denial letter attached as **Exhibit D**.

67. On May 8, 2023, Defendant MetLife reasserted its denial stating that Plaintiff's claim was not payable due to unpaid premiums for May 2022. Denial letter attached as **Exhibit E**.

## CLASS ALLEGATIONS

68. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of persons (the "Class") defined as follows:

> All Participants of the FCA US LLC Group Insurance Program that were paying for, or beneficiaries where a claim has been submitted for, accidental death and dismemberment benefits through Group Policy No. 73903-1-G and the premiums for coverage were being deducted via weekly payroll deductions.

69. Defendant FCA is a multi-billion-dollar automaker and has over 50,000 employees.

70. It offers a wide range of employment benefits through different group insurance policies, and acts as the plan administrator for those group plans.

71. FCA sends out plan documents and notices as part of its plan administrator duties.

72. FCA is also tasked with collecting premiums from Participants of group insurance policies.

73. FCA then handles those premiums and provides them to an insurance carrier to secure coverage for its employees.

74. FCA acted in this capacity for the Plan and Policy.

75. It would collect the premium amounts for coverage under the Policy via weekly deductions from an employee's paycheck.

76. However, it failed to collect the proper amount of premiums necessary for its employees to have coverage for any month.

77. FCA collected premiums retroactively, efficiently providing no benefits under the Policy according to its plain language.

78. FCA also serially underbilled employees which made benefits under the Policy illusory.

79. Even if an employee worked an entire month and paid the weekly premium, she would still not have coverage for that month.

80. As a result of this serial underbilling, numerous present and past Participants paid premiums for years for no coverage or benefit under the plain language of the Policy.

81. FCA was aware that it was incorrectly collecting premiums and failing to provide the full benefit of the Policy.

82. FCA was handling plan assets imprudently by using them to purchase insurance against a past risk that never occurred.

83. Defendant MetLife is a multi-billion-dollar insurance company.

84. It offers life insurance plans all over America, and has more than a million Americans insured.

85. MetLife was the party acting as the claim administrator under the Plan for claims submitted through the Policy.

86. MetLife denied numerous claims submitted through the Policy by stating premiums were not current.

87. MetLife was aware that the billing of premiums through the Policy were retroactive.

88. MetLife was aware that Participants were being underbilled.

89. MetLife was aware that there was no grace period provided by the Policy.

90. MetLife was aware it was applying the terms of the Policy in an arbitrary and capricious manner for AD&D claims under the Policy.

91. Defendants were aware there was no right to convert benefits under the Policy to an individual plan.

92. Members of the proposed class are so numerous that joinder is impracticable.

93. The precise numbers of this Class is currently unknown to Plaintiff but is readily ascertainable by Defendants.

94. Upon information and belief, there are over 1000 members of the proposed class.

95. Disposing of the class members' claims as a class action would benefit the parties and greatly reduce the aggregate judicial resources that would otherwise be spent on thousands of individual actions.

96. Plaintiff's claims are typical of the claims held by the proposed class members.

97. Plaintiff had been paying for coverage under the Policy through weekly payroll deductions handled by Defendant FCA.

98. Plaintiff was also a beneficiary for a claim submitted through the Policy that was denied for unpaid premiums.

99. Many questions of law and fact are common to all members of the proposed class and predominate over any individual issues. Those questions of law and facts include, without limitation:

   a. Whether Defendants' premium collection method violated its ERISA fiduciary duty of loyalty to Participants;

   b. Whether Defendants' knowledge that premiums were being billed retroactively and not insuring against future risk violated its ERISA fiduciary of prudence to Participants;

   c. Whether Defendants' application of the eligibility provisions of the Policy was arbitrary and capricious;

   d. Whether Defendant FCA was aware of Defendant MetLife's arbitrary and capricious interpretation of the eligibility provisions under the Policy;

   e. Whether Defendant MetLife was aware and provided cover for Defendant FCA's serial underbilling of Participants.

100. These questions all stem from a common nucleus of operative fact.

101. The prosecution of separate actions would likely result in inconsistent or varying rulings on these questions, leading to incompatible standards of conduct for the Defendants.

102. The prosecution of any individual action also risks creating precedent that would bind potential class members or otherwise impair or impede their claims.

103. For many proposed class members, filing and prosecuting an individual action would be too expensive.

104. A single class action is therefore superior to any other available method for the fair and efficient adjudication of this controversy.

105. Plaintiff and her counsel will fairly and adequately protect the interests of the proposed class.

106. Plaintiff and her counsel have no interests that are antagonistic to the proposed class.

107. Management of the class through this one case will not present any difficulties.

108. A single class action will reduce litigation, save judicial resources, and provide a fair and speedy resolution.

109. Defendants' future conduct will affect each potential class member, making the requested injunctive relief appropriate for the entire proposed class.

110. Without a class action and injunctive relief, Defendants will likely damage Plaintiff and the proposed class again.

### COUNT I – Breach of Fiduciary Duty (ERISA § 502(a)(2))

**(On behalf of Jacqueline Vasser, individually, as well as the entire Class)**

111. All preceding paragraphs are incorporated as if set forth fully herein.

112. Defendants are fiduciaries within the meaning of ERISA §§ 3(21), 29 U.S.C. § 1002(21).

113. They breached their duties of loyalty, care, prudence, and adherence to Policy documents by implementing a premium collection scheme that they knew would result in lapses and coverage denials.

114. Defendants did not act in the interest of Participants.

115. Defendants failed to provide benefits to Participants.

116. Defendants maintained a plan structure that they knew would operate to the detriment of Participants by predictably causing benefit denials despite premium payment.

117. Defendants were aware that Participants could pay all premiums requested and still would not have coverage for a future risk.

118. Defendants were aware that Participants were paying for retroactive coverage that provided no actual benefit.

119. Defendants were aware that plan eligibility provisions were being applied arbitrarily and capriciously.

120. Defendant FCA provided materially misleading information to Participants about the status of their benefits.

121. Participants were sent misleading premium invoices that failed to show the actual premium needed to keep benefits active and to insure against future risk or events.

122. As a result of these breaches, Participants suffered a loss that totals millions of dollars in premiums paid for illusory coverage.

123. Plan Participants were having their paychecks billed for years to insure against a past risk that did not occur.

124. Participants were told their premiums were going toward AD&D coverage, but no future risk was ever insured against if the Participant paid the premiums via weekly payroll deduction.

125.  Defendants' fiduciary breach makes them personally liable for the losses incurred by Participants and beneficiaries.

126.  Each Defendant was fully aware of the breaches and improper actions taken by each other.

127.  Each Defendant contributed to the others' breach by enabling the improper conduct and failed to take any corrective action.

128.  Each Defendant participated in this breach in their own way.

129.  Defendant FCA serially underbilled Participants.

130.  Defendant MetLife would arbitrarily apply eligibility provisions to give cover for Defendant FCA's serial underbilling.

131.  Defendant FCA Group Insurance Program was fully aware that Participants were being billed in a manner for insurance that would never insure against a future event.

132.  Defendant FCA Group Insurance Program was also aware that incorrect premium invoices were sent to Participants and that even if the Participants paid those invoices, no coverage would be active against a future risk.

## COUNT II – Recovery of Benefits (ERISA § 502(a)(1)(B))

### (On behalf of Jacqueline Vasser, individually, as well as the entire Class)

133.  All preceding paragraphs are incorporated as if set forth fully herein.

134.  The Plan and Policy are ERISA governed welfare plans.

135.  Plaintiff was an ERISA Participant of the Plan and Policy.

136.  Plaintiff had $300,000 in AD&D benefits through the Policy.

137.  Plaintiff's spouse, Christopher Vasser, was insured for $150,000 in AD&D benefits through the Policy.

138. On May 15, 2022, Mr. Vasser was the victim of a homicide.

139. On June 21, 2022, Plaintiff submitted a claim for benefits through the Policy.

140. On November 21, 2022, Plaintiff's claim was denied.

141. Defendant MetLife denied the claim stating that the proper amount of premiums were not paid, so coverage was not active when Plaintiff's husband died in a covered accident.

142. Plaintiff did pay premiums for AD&D coverage via payroll deduction in May 2022.

143. Defendants accepted Plaintiff's May 2022 premium payments.

144. Plaintiff exhausted all administrative remedies.

145. Other Participants that were paying premiums for Policy coverage via weekly payroll deductions had claims denied for the same reasons.

146. Beneficiaries under the Policy had claims denied where the Participant was paying the premiums via weekly payroll deduction for the same reasons.

147. Defendant accepted premiums from Participants within a month of a covered accident occurring under the Policy.

148. Participants were told they would have coverage if they enrolled for premiums to be deducted weekly from their paycheck.

149. Defendant MetLife received these premium payments knowing that there was no future event being insured against.

150. Defendant MetLife was aware that Defendant FCA was serially underbilling the Participants.

151. If a Participant paid every premium billed through payroll deductions, Defendants were aware that no coverage through the Policy would be applicable to any future risk or event.

152. Defendant MetLife interpreted eligibility provisions not in accordance with the Policy.

153. Defendant MetLife applied the eligibility provisions arbitrarily.

154. In the same month that Defendant MetLife received premium payments from a Participant that paid via weekly payroll deductions, it would still deny a claim that arose in that same month for failure to pay premiums.

155. These Defendants are liable for each other's breach pursuant to 29 U.S. Code § 1105.

### COUNT III – Equitable Relief (ERISA § 502(a)(3))

**(On behalf of Jacqueline Vasser, individually, as well as the entire Class)**

156. All preceding paragraphs are incorporated as if set forth fully herein.

157. Defendants' actions entitled the proposed class to an injunction as appropriate equitable relief to prevent future harm and damage to the proposed class.

158. An injunction stopping Defendant FCA's serial underbilling practices would provide protection for the entire proposed class.

159. Defendant MetLife has gained the benefit of thousands of premium payments while providing no actual coverage in return.

160. Participants reasonably believed they were paying for insurance coverage for a future event.

161. However, Participants were paying thousands of premiums for retroactive coverage that provided no insurance benefit.

162. If Defendants are allowed to continue to improperly bill Participants, then irreparable harm will continue to happen to the proposed class.

163. Defendant MetLife needs to be disgorged of the benefit of all the premiums it collected on this illusory coverage.

164. Participants are entitled to receive their premiums back because they were effectively paying for no benefit.

165. Participants also need protection in the future from Defendants' improper application of the eligibility terms of the Policy.

166. Participants' premiums should be applied prospectively as to actually insure against a future event.

167. The application of the premiums retrospectively has caused harm to the proposed class and will continue to do so without injunctive relief.

168. Through the structural defect of its premium-collection scheme, Defendants eliminated the AD&D benefit from the Plan while continuing to collect premiums for it, creating an illusory benefit that never existed in practice.

## **PRAYER FOR RELIEF**

    a. Certify this action as a class action under Rule 23;

    b. Appoint Plaintiff as Class Representative and her counsel as Class Counsel;

    c. Declare that Defendants' acts and omissions violated ERISA;

    d. Award benefits due under the Plan pursuant to ERISA § 502(a)(1)(B);

    e. Order Defendants to restore to the Plan all losses caused by their breaches;

    f. Reform the Plan's billing and premium collection provisions to comply with ERISA;

    g. Reform the application of the Policy's eligibility provision to provide protection when an employee makes a premium payment within 31 days of a covered accident;

    h.  Enjoin Defendants from continuing any practice that results in retroactive termination due to underbilling;

    i.  Award pre- and post-judgment interest;

    j.  Award reasonable attorneys' fees and costs;

    k.  Award such other equitable or remedial relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a trial by jury on all claims triable as a matter of right.

Respectfully submitted,

Dated: August 13, 2025

By: /s/ Michael Wentz
The Boonswang Law Firm
1500 Sansom Street, Suite 200
Philadelphia, PA 19102
Tel: 215.940.8900
Fax: 215.974.7800
michael@boonswanglaw.com

By: /s/ Joseph Mattia
The Boonswang Law Firm
1500 Sansom Street, Suite 200
Philadelphia, PA 19102
Tel: 215.940.8900
Fax: 215.974.7800
joseph@boonswanglaw.com
PA State Bar No. 326282
*Pro Hac Vice admission pending*